FIDELITY-PHILADELPHIA TRUST COMPANY, EXECUTOR OF THE ESTATE OF NEFF E. PARISH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34045. Promulgated June 8, 1931.

*W. C. Mason, Esq.*, for the petitioner.
*Harold Allen, Esq.*, and *W. R. Lansford, Esq.*, for the respondent.

622

OPINION.

ARUNDELL: The respondent has abandoned the fraud penalty; the parties have stipulated the March 1, 1913, value of so much of the stock as was acquired prior thereto and the cost of the stock purchased after March 1, 1913, is not in question. This action leaves for decision the major question of whether the stock transaction gave rise to taxable income. The respondent determined the proposed deficiency on the theory that the stocks and cash received by the decedent from Elkins, Morris & Company were a liquidating dividend of the Parish Manufacturing Company. While still adhering to that view, he argues, in the alternative, that the transaction was, in effect, a sale of the Parish Company stock to Elkins, Morris & Company, and a purchase of other stocks with part of the proceeds.

The testimony of a member of the brokerage firm that handled the transaction is that the plan detailed in the findings of fact was conceived and carried out in order to " save some tax." Of course if the method adopted comes within the law it is not open to condemnation merely because it results in tax avoidance. But where avoidance is the expressed purpose, the transaction should be subjected to close scrutiny to determine whether it is on the safe side of the line indicated by the policy, if not by the mere letter of the law. The presumptive correctness of the respondent's determination requires this course where there is no charge of fraud.

The assets of the Parish Company at the time the transaction occurred were cash and liquid securities and nothing else. If the stockholders had directly liquidated and taken their pro rata share of the cash and securities there would have been a tax to pay. Elkins, Morris & Company were called in to avoid this consequence of a liquidation. The value of the securities held by the Parish Company was determined and this amount, plus the cash on hand, divided by the shares of the Parish Company outstanding, served to fix the value of the Parish Company stock. But Elkins, Morris & Company

fixed the value of their services in the transaction at $25,000, so an adjustment in the price of Parish stock to reflect this charge was necessary and an upset price finally determined of $724.20 per share.

Petitioner, as well as other stockholders, immediately delivered so much of his stock in the Parish Company as was then available for transfer to Elkins, Morris & Company and the following day the Parish Company was liquidated. Its securities were sold and coincident with their sale, or later, the securities desired or agreed to by petitioner were bought on the market and turned over to him. If the price of the securities he desired rose in value over their price on the date the transaction took place, petitioner was to bear the additional cost. Some of the securities desired were not obtainable and others had to be substituted. Petitioner's witness, Charles H. Howell, a partner in Elkins, Morris & Company, did not testify directly that the cash and proceeds from the sale of securities theretofore held by the Parish Company were used to purchase the securities for petitioner, but a fair inference from the entire record is that such was the fact and the burden was on petitioner to show to the contrary in establishing its case.

We are without facts to show whether Elkins, Morris & Company bought the stock for its own account, and then transferred it to the decedent, or whether the purchase orders were placed in the decedent's name, such as is ordinarily done when stock purchases are made by an individual through a broker. Elkins, Morris & Company did not on June 20, 1922, so far as the record discloses, have legal or equitable title to any of the stocks it agreed to deliver, and the fact that it was unable to acquire some of the stock indicates that on June 20 it was not positive that it could make delivery as agreed. Delivery of the stocks agreed upon was contingent upon the availability of the securities in the market. The decedent was to get the benefit of any drop and stand the loss of any increase in the market value of the stocks selected for delivery to him, and had there been a big increase in the market value of such stocks the decedent would have become a debtor rather than a creditor of the broker.

In our opinion it is not necessary in this case to decide the question whether there may be an exchange within the meaning of the statute when one party to the transaction is not at that time the owner of the property to be exchanged. But where the entire plan discloses that Elkins, Morris & Company's interest was solely to make its commission of $25,000, that the assets of the Parish Company were turned over to Elkins, Morris & Company to be used by them, as undoubtedly they were, to purchase the securities the decedent and the other stockholders desired, and, in addition to an adjustment payment, cash equal to about one-fourth of the agreed value of the

decedent's stock was advanced to him to obtain the release of shares on deposit as collateral, we do not believe that in law and in fact there was a bona fide exchange of stock for stock within the meaning of the statute, but in truth and in fact a liquidation sale and purchase.

Where business is transacted in ordinary course the terminology used by the parties is to be given weight and their treatment of the transaction sympathetically considered. Under the facts here present their designation of the transaction as an exchange means little, in view of the evidence that the plan was conceived and executed to avoid the tax on that very ground. The whole transaction seems to us to have been artificial in the sense that, given no tax problem, it would almost certainly have been carried out in another way.

The essence of the transaction detailed in the findings is this: The stockholders of the Parish Company wanted to realize on their holdings, but they did not want to take a liquidating dividend, as such, as that would have subjected them to tax. So they called in an intermediary who was engaged in buying and selling securities and arranged what they now call an " exchange " of the securities underlying the Parish stock for other securities.

As pointed out above, if the Parish Company itself had exchanged its holdings for other securities and distributed the latter to its stockholders there can be no doubt that such distribution would be a distribution in liquidation. Does it matter that the Parish stock was turned in to a broker who made the exchange and the distribution? Looking through the formalities with which the stockholders surrounded the deal to the substance, it seems to us the plain fact is that the broker was merely an agent who effected the liquidation of the Parish Company and the securities received by the decedent were received in liquidation of his stock in that company. The evidence is that the plan was carried out step by step as agreed upon by the stockholders and the broker. One of the steps taken was the liquidation of the company and it must accordingly be considered that the liquidation was one of the points upon which an agreement had previously been reached. This, in our opinion, demonstrates that liquidation was the paramount object of the stockholders and the formalities were used merely to obscure the basic fact.

Petitioners refer to *Eric A. Pearson*, 16 B. T. A. 1405, which involved this same transaction, as establishing that the brokerage firm actually received the dividend on the Parish Company. That case was decided on a stipulation and we had no occasion to inquire into the true facts.

In our opinion the transaction was not an exchange within the meaning of section 202 (c). The respondent's determination is affirmed, subject to the adjustments agreed to by the parties and stipulated in the record.

*Decision will be entered under Rule 50.*